UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| JOSEPH FRANCIS SCHMALING, III, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:18-CV-95-HBG |
| | ) |
| ANDREW M. SAUL,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 17].

Now before the Court is Plaintiff's Motion for Judgment on the Pleadings and Memorandum in Support [Docs. 20 & 20–1] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 21 & 22]. Joseph Francis Schmaling, III ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Andrew M. Saul ("the Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's motion.

## I. PROCEDURAL HISTORY

On August 19, 2014, Plaintiff protectively filed an application for disability insurance benefits and supplemental security income benefits pursuant to Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* and 1381 *et seq.*, claiming a period of disability that began

---

[1] Andrew M. Saul was sworn in as the Commissioner of Social Security on June 17, 2019, during the pendency of this case. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the Defendant in this case.

on December 20, 2013. [Tr. 15, 155, 164]. After his application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 115–16]. A hearing was held on December 8, 2016. [Tr. 31–44]. On March 3, 2017, the ALJ found that Plaintiff was not disabled. [Tr. 15–26]. The Appeals Council denied Plaintiff's request for review on January 10, 2018 [Tr. 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on March 12, 2018, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.  ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.
>
> 2. The claimant has not engaged in substantial gainful activity since December 20, 2013, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: chronic obstructive pulmonary disease; borderline intellectual functioning; depression; and antisocial personality disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) which is work that requires lifting up to 20 pounds occasionally and 10 pounds frequently; he can perform jobs that

would not expose him to excessive dust, fumes, chemicals, or temperature extremes; and he can do simple, routine jobs and job tasks with no frequent public contact.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on April 22, 1968 and was 45 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 20, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 17–26].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541,

544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV. DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the

4

immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4) and -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

V.   ANALYSIS

Plaintiff asserts that the ALJ's disability decision is not supported by substantial evidence in several regards. First, Plaintiff maintains that the ALJ improperly found that his failure to seek treatment demonstrated medical improvement. [Doc. 20-1 at 4–5]. Next, Plaintiff alleges that the ALJ failed to properly consider the limitations caused by his symptoms, and instead improperly based his decision on evaluating Plaintiff's credibility. [*Id.* at 5–7]. Additionally, Plaintiff asserts that the ALJ erroneously disregarded a third-party statement from his mother because she was not an acceptable medical source. [*Id.* at 7–8]. Lastly, Plaintiff submits that the ALJ's RFC determination is not supported by substantial evidence. [*Id.* at 9]. The Court will address Plaintiff's specific allegations of error in turn.

A.   **Treatment History**

Plaintiff claims that the ALJ improperly concluded that he only received minimal treatment for his COPD and mental impairments. Rather, Plaintiff asserts that "the ALJ somehow concluded that an untreated chronic disease somehow increased the likelihood of performing light work." [*Id.*]. Therefore, Plaintiff alleges that the ALJ failed to consider alternative explanations for the lack of medical treatment. The Commissioner maintains that the ALJ properly considered Plaintiff's limited and conservative treatment for several of his severe impairments.

When determining Plaintiff's RFC, the ALJ first noted that the record "shows only minimal treatment and minimal objective findings" for Plaintiff's COPD. [Tr. 20]. The ALJ detailed Plaintiff's treatment with Dianne DeBerry, FNP, from May 2014 through October 2014, including that he had not purchased prescribed inhalers when he was last seen in October of 2014. [*Id.*]. Similiarly, the ALJ found that the medical record exhibited only minimal treatment for Plaintiff's borderline intellectual functioning, depression, and antisocial personality disorder. [Tr. 21]. The

6

ALJ reviewed Plaintiff's mental health treatment with Sara Melton, Case Manager with the Johnson City Community Health Center, from May of 2014 to August 28, 2014. [*Id.*]. Further, the ALJ detailed the results of Plaintiff's WAIS-IV testing, as well as his psychological consultative examination with Chad Sims Ph.D. on November 6, 2014. [*Id.*]. Accordingly, the ALJ found that the medical record did not indicate that Plaintiff "sought nor required treatment for his mental complaints since 2014." [Tr. 22].

The Commissioner correctly states that, in contrast to Plaintiff's arguments, the ALJ did not consider Plaintiff's minimal and conservative treatment as evidence that his conditions had improved. Rather, the ALJ analyzed Plaintiff's treatment history for his severe impairments while determining his RFC. Ultimately, the ALJ properly considered Plaintiff's lack of treatment history, as well as conservative treatment, in discounting Plaintiff's allegations of disabling pain. *See* 20 C.F.R. § 404.1529(c)(3)(v) (listing treatment a claimant has received for their pain or other symptoms as a relevant factor to be weighed in considering the severity of a claimant's symptoms); *see, e.g.*, *Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1001 (6th Cir. 2011) (holding that the plaintiff's limited treatment was inconsistent with a finding of total disability); *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004) ("A failure to [seek treatment] . . . may cast doubt on a claimant's assertions of disabling pain."); *Robertson v. Colvin*, No. 4:14-cv-35, 2015 WL 5022145, at *5 (E.D. Tenn. Aug. 24, 2014) (finding the ALJ properly discounted Plaintiff's subjective complaints because "the ALJ also considered that Plaintiff received routine, conservative care for his impairments") *(*citing *Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 473 (6th Cir. 2014)).

Plaintiff asserts that the ALJ failed to consider alternative reasons for his lack of treatment, and that "[o]ver the period at issue, [Plaintiff] has not always been able to regularly treat his

7

underlying disability." [Doc. 20-1 at 5]. Social Security Ruling 96–7p provides that an ALJ "must not draw any inferences about an individual's symptoms . . . from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide," such as that an "individual may be unable to afford treatment and may not have access to free or low-cost medical services." SSR 96–7p, 1996 WL 374186, at *7–8 (July 2, 1996). Plaintiff, however, has failed to allege that he was unable to afford any medication, or any other specific explanations for the lack of treatment. Additionally, "there is no evidence that he ever sought treatment offered to indigents or was denied medical treatment due to an inability to pay." *Moore v. Comm'r of Soc. Sec.*, No. 14-1123, 2015 WL 1931425, at *3 (W.D. Tenn. Apr. 28, 2015) (citing *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005) ("However, there is no evidence Goff was ever denied medical treatment due to financial reasons.")). For example, with respect to Plaintiff's mental health treatment, the ALJ documented Plaintiff's prescribed use of Lexapro, Seroquel, and Carbamazepine throughout 2014. *See Dillard v. Comm'r, Soc. Sec. Admin.*, No. 3:17-0799, 2018 WL 1875841, at *4 (M.D. Tenn. Apr. 19, 2018) ("There is also no evidence that she was denied any medication or treatment at any point during the relevant time period . . .The record instead demonstrates that Plaintiff continued receiving and using prescription medication."), *report and recommendation adopted sub nom.*, *Dillard v. Berryhill,* 2018 WL 3472825 (M.D. Tenn. July 18, 2018).

Therefore, the Court finds that the ALJ appropriately considered Plaintiff's limited and conservative treatment in the RFC determination, and Plaintiff's allegation of error does not constitute a basis for remand.

### B. Evaluation of Plaintiff's Symptoms

Plaintiff alleges that the ALJ improperly focused on his credibility, rather than evaluating

8

his subjective allegations. Plaintiff submits that the ALJ failed to consider examination findings regarding limitations on his activities of daily living when evaluating his subjective allegations of disabling symptoms. Additionally, Plaintiff repeats his claim that the ALJ failed to consider why he may not have had proper medical care, including that "[p]eople with antisocial personality disorder are unlikely to believe they need medical treatment." [*Id.*].

The ALJ's decision postdates Social Security Ruling 16-3p, which eliminates the use of the term "credibility" from the applicable policy regulation, and clarifies that a "subjective symptom evaluation is not an examination of an individual's character." 2016 WL 1119029, at *1 (Mar. 16, 2016); *see also Rhinebolt v. Comm'r of Soc. Sec.*, No. 2:17-CV-369, 2017 WL 5712564, at *8 (S.D. Ohio Nov. 28, 2017) (noting that under SSR 16-3p, "an ALJ must focus on the consistency of an individual's statements about the intensity, persistence and limiting effects of symptoms, rather than credibility."), *report and recommendation adopted by*, 2018 WL 494523 (S.D. Ohio Jan. 22, 2018). However, "[t]he two-step process and the factors ALJs consider when assessing the limiting effects of an individual's symptoms have not changed with the advent of SSR 16-3p." *Holder v. Comm'r of Soc. Sec.*, No. 1:17-CV-00186-SKL, 2018 WL 4101507, at *10 n.5 (E.D. Tenn. Aug. 28, 2018).

The ALJ is still tasked with first determining whether there is an "underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p, 2016 WL 1119029, at *2–3. Then, the ALJ is responsible for determining the intensity, persistence, and limiting effects of an individual's symptoms, including assessing their: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken

9

to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. *Id.* at *4–8.

In the disability decision, the ALJ noted that while determining Plaintiff's RFC, he found that Plaintiff's allegations of pain and other limiting symptoms were not completely credible. [Tr. 22]. Accordingly, the ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and record. [Tr. 23]. First, the ALJ again noted Plaintiff's minimal treatment and objective findings on examinations. [*Id.*]. For example, the ALJ detailed that although Plaintiff alleged disability in part due to his respiratory problems, the record reflected that he continued to smoke. [*Id.*]. Additionally, the ALJ noted that no treating physician had placed any permanent restrictions on Plaintiff at any time during the period at issue. [*Id.*].

The ALJ also reviewed Plaintiff's activities of daily living. [*Id.*]. The ALJ found that Plaintiff's reported activities of daily living supported the RFC determination, including being able to live alone, clean his room and prepare simple foods, pay bills, use public transportation and ride his bike, pay bills and count change, spend time with others, talk with others on the phone, play games on the computer, and having no problems with personal care. [*Id.*]. Further, the ALJ detailed that although Plaintiff has a history of substance abuse, the medical record showed no current abuse, and Plaintiff testified that he no longer abused substances. [*Id.*].

Although Plaintiff challenges the ALJ's use of the term credibility, the Court finds that the ALJ appropriately considered the limiting effects of Plaintiff's alleged symptoms. *See Walls v.*

*Berryhill*, No. CIV-18-464-STE, 2019 WL 1388587, at *5 (W.D. Okla. Mar. 26, 2019) ("Although the ALJ stated that Plaintiff's 'credibility' was diminished and SSR 16-3p eliminated the use of the term 'credibility,' the ALJ was still charged with considering the consistency of Plaintiff's statements with the evidence of record in evaluating Plaintiff's subjective statements."). "Despite the linguistic clarification, courts continue to rely on pre-SSR 16-3p authority providing that the ALJ's credibility determinations are given great weight." *Getz v. Comm'r of Soc. Sec.*, No. CV 18-11625, 2019 WL 2710053, at *3–4 (E.D. Mich. June 10, 2019), *report and recommendation adopted by*, 2019 WL 2647260 (E.D. Mich. June 27, 2019) (citing *Kilburn v. Comm'r of Soc. Sec.*, No. 1:17-CV-603, 2018 WL 4693951, at *7 (S.D. Ohio Sept. 29, 2018); *Duty v. Comm'r of Soc. Sec.*, No. 2:17-CV-445, 2018 WL 4442595, at *6 (S.D. Ohio Sept. 18, 2018)).

The ALJ noted how Plaintiff's daily activities, as well as minimal treatment and objective findings, supported his determination that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the alleged symptoms were not consistent with the medical record. *Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2003) ("[T]he ALJ did not give undue consideration to Temples' ability to performing day-to-day activities. Rather, the ALJ properly considered this ability as one factor in determining whether Temples' testimony was credible."); *Henderson v. Comm'r of Soc. Sec.*, No. CIV.A. 13-13225, 2014 WL 3529727, at *7 (E.D. Mich. June 19, 2014) (finding the ALJ properly took into account the plaintiff's ability "to live alone, attend to personal care tasks, prepare simple meals, perform some household chores, manage her finances, drive a vehicle, and shop"), *report and recommendation adopted by*, 2014 WL 3529441 (E.D. Mich. July 16, 2014).

However, Plaintiff claims that the ALJ ignored the findings of Dr. Sims, the consultative psychological examiner, who opined that Plaintiff suffered from restrictions in activities of daily

11

living. Dr. Sims consultatively examined Plaintiff on November 6, 2014, and diagnosed unspecified depressive disorder, moderate cocaine use disorder, and probable antisocial personality disorder, by history. [Tr. 339]. Dr. Sims performed a clinical interview and mental status examination, as well as reviewed pertinent medical records and administered WAIS-IV and WRAT-4 tests. [Tr. 330]. Further, Dr. Sims reviewed Plaintiff's personal and family history, substance-abuse history, legal history, psychiatric history, mental status, and summarized the psychological testing. [Tr. 331–36]. With respect to Plaintiff's activities of daily living, Dr. Sims noted that Plaintiff stated that he manages his medications and finances with some difficulty, that he could prepare simple meals and sweep a couple of times per week, that he relies on public transportation without difficulty, and that his hobbies were watching television and playing games on his computer. [Tr. 338]. Accordingly, Dr. Sims opined that Plaintiff may have up to a moderate impairment in his social relating, as well as his ability to adapt to change. [*Id.*].

Plaintiff does not allege how the ALJ "ignored [Dr. Sims'] findings with regard to [his] limitations in his daily activities." [Doc. 20-1 at 6]. The ALJ reviewed Dr. Sims' opinion [Tr. 21–22], and found that the opinion was well supported by medically acceptable clinical signs and findings, as well as other diagnostic techniques, and was consistent with the medical record [Tr. 24]. Plaintiff fails to assert how Dr. Sims' opinion is in conflict with the ALJ's evaluation of his subjective symptoms. Ultimately, the ALJ is tasked with determining the intensity, persistence, and limiting effects of an individual's symptoms, including by analyzing the claimant's daily activities. SSR 16-3p, 2016 WL 1119029, at *2–3. The ALJ's discussion of Plaintiff's daily activities is extremely similar to those detailed by Dr. Sims, and Plaintiff fails to allege a specific opined functional limitation that the ALJ ignored.

Lastly, Plaintiff repeats his argument that the ALJ failed to address how his antisocial

personality disorder affected his limited medical treatment. However, Plaintiff again fails to demonstrate how his mental impairments affected his ability to obtain medical treatment. During the disability decision, the ALJ noted Plaintiff's antisocial personality disorder, but also reviewed that Plaintiff's mood and affect were appropriate upon mental status examinations [Tr. 21], that he was alert throughout an interview [Tr. 22], as well as that no treating physician placed any permanent restrictions on him [Tr. 23].

Ultimately, the Court finds that substantial evidence supports the ALJ's assessment of Plaintiff's subjective complaints. The ALJ properly considered a number of factors, including Plaintiff's limited treatment, continued smoking habit, the objective examination findings, and the opinions in the medical record. Accordingly, Plaintiff's arguments regarding the credibility determination do not constitute a basis for remand.

### C. Statement of Plaintiff's Mother

Plaintiff alleges that the ALJ disregarded the statement of his mother, Kathleen Schmaling, solely because she was not an acceptable medical source. However, the Commissioner asserts that the ALJ properly considered her statement, but found that it was not consistent with the medical record.

The regulations provide that an ALJ may consider information from "non-medical sources." *See* 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4); *see also* Social Security Ruling 06–3p, 2006 WL 2329939, at *2 (Aug. 9, 2006) (listing "other sources" as defined in §§ 404.1513(d) and 416.913(d) as including "spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, clergy, and employers"). In considering statements from "other sources," under Social Security Ruling 06-3p, "the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the

evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." 2006 WL 2329939, at * 1.

Plaintiff's mother completed a third-party function report on November 3, 2014. [Tr. 225]. In this statement, Ms. Schmaling reported that she spends twelve to sixteen hours per week with her son, that he has a constant cough and shortness of breath, and reviewed his daily activities. [Tr. 218–19]. Plaintiff's mother provided her opinion on his ability to perform personal care and prepare meals, house and yard work, travel, shopping, handling his money, hobbies and interests, and social activities. [Tr. 219–22]. Ms. Schmaling stated that her son needs assistance with showers and haircuts, as well as must be reminded to take his medicine and get it refilled. [Tr. 220]. Additionally, Ms. Schmaling indicated that Plaintiff cannot stand for long periods in the kitchen. [*Id.*]. Lastly, she noted that Plaintiff needed help with his living arrangements, and that he was disturbed about the recent death of his girlfriend. [Tr. 225].

In the disability decision, the ALJ noted that he considered "the third party statement of Ms. Kathleen Schmaling," but found that her statement did not establish that Plaintiff was disabled. [Tr. 24]. The ALJ considered that Ms. Schmaling was not medically trained to evaluate Plaintiff's symptoms, as well as that due to her relationship with Plaintiff, she could not be considered a disinterested third party. [*Id.*]. Lastly, the ALJ found that significant weight could not be assigned to her statements because they were not consistent with the remainder of the opinions given by medical doctors. [*Id.*].

The Court finds that the ALJ appropriately considered Ms. Schmaling's statement and detailed why it was not entitled to significant weight. "In considering evidence from 'non-medical sources' who have not seen the individual in a professional capacity in connection with their

impairments, such as spouses, parents, friends, and neighbors, it [is] appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." SSR 06-03p, 2006 WL 2329939, at *6. Here, the ALJ detailed Ms. Schamling's relationship to Plaintiff, as well as lack of medical training, and found her statement was inconsistent with the medical record. Accordingly, the ALJ properly considered the written statement of Plaintiff's mother. *See, e.g.*, *Stolz v. Berryhill*, No. CV 18-136-DLB, 2019 WL 2291466, at *7 (E.D. Ky. May 29, 2019) (finding the ALJ properly considered the plaintiff's mother's statement by noting that she could not be considered a disinterested third-party witness, as well as that it was inconsistent with the opinions of medical professionals); *Ashmore v. Comm'r of Soc. Sec.*, No. 1:17-cv-100, 2019 WL 1198889, at *2 (M.D. Tenn. Mar. 14, 2019) (affirming ALJ's decision to afford limited weight to letter from claimant's father).

### D.     ALJ's RFC Determination

Lastly, Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence. Plaintiff claims that "[t]he ALJ [ ] erroneously determined that, despite accepting [Plaintiff's] COPD, intellectual limitation[s], and severe mental health issues, he could perform light work activity." [Doc. 20-1 at 9]. In support of this claim, Plaintiff repeats several arguments already discussed by the Court—including that the ALJ improperly weighed his lack of treatment and improperly assessed his credibility. Plaintiff also alleges that the ALJ failed to appropriately consider the mental health limitations in Dr. Smith's opinion.

The ALJ reviewed the medical record and determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), including work that requires lifting up to twenty pounds occasionally and ten pounds frequently; jobs that would not expose him to

excessive dust, fumes, chemicals, or temperature extremes; and only simply, routine jobs and job tasks with no frequent public contact. [Tr. 19].

A claimant's RFC is the most that claimant can do despite his or her impairments. 20 C.F.R. § 404.1545(a)(1). In other words, the RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). An ALJ is responsible for determining a claimant's RFC after reviewing all the relevant evidence of record. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 727–28 (6th Cir. 2013).

First, the Court has already detailed that the ALJ appropriately considered Plaintiff's limited and conservative treatment, as well as properly weighed Plaintiff's subjective allegations of disability stemming from his symptoms. Plaintiff therefore claims that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to incorporate "a laundry list of mental health limitations," including diagnosed depressive disorder and anti-social personality disorder in Dr. Sims' opinion. [Doc. 20-1 at 9]. However, the ALJ found Plaintiff's depression and antisocial personality disorder to be severe impairments, and considered their functional limitations on Plaintiff's ability to perform work. [Tr. 17]. The ALJ reviewed Plaintiff's limited mental health treatment, Dr. Sims' opinion, and the opinions of the nonexamining state agency psychiatrists. [Tr. 21–24]. Although the ALJ "accept[ed]" Dr. Sims' opinion, Plaintiff does not allege that the ALJ failed to incorporate specific functional limitations set forth in the opinion. [Tr. 24]. The ALJ incorporated functional limitations stemming from Plaintiff's mental impairments by limiting him to only "simple, routine jobs and job tasks with no frequent public contact." [Tr. 19].

Ultimately, the Court finds that the ALJ's finding that Plaintiff could perform a range of light work was within his "zone of choice," and Plaintiff's allegations of error do not constitute a basis for remand. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (holding that "[t]he substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way" and that as long as substantial evidence supports the ALJ's finding, the fact that the record contains evidence which could support an opposite conclusion is irrelevant) (quotations omitted).

## VI. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Judgment on the Pleadings [**Doc. 20**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 21**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

*/s/ Bruce Guyton*
United States Magistrate Judge